## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

AS and GS., both minor children,
by and through their parent,
Adam Stephens

Plaintiffs,

v.

Case No.: 5:21-cv-1369-MHH

HUNTSVILLE CITY BOARD OF
EDUCATION; et al

Defendants

FILED

2021 NOV 24 P 3: 47

U.S. DISTRICT COURT
N.D. OF ALABAMA

---

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

---

Plaintiff Adam Stephens
1118 Springtime Blvd.
Huntsville AL 35802
Tel: (256) 919-4253
Adamtstephens9470@gmail.com

1

# TABLE OF CONTENTS

**TABLE OF CONTENTS**ii

**TABLE OF AUTHORITIES**iii

**STATEMENT OF ISSUES**1

**SUMMARY OF ARGUMENTS**2

**FACTUAL BACKGROUND**2

**ARGUMENT**3

POINT I3

PLAINTIFF'S COMPLAINT SETS FORTH PLAUSIBLE FEDERAL CLAIMS BASED ON DEFENDANTS' VIOLATION
OF 42 U.S.C. § 1983 AND THE U.S. CONSTITUTION3

  *1. Plaintiff has standing to bring this action seeking injunctive relief as against all Defendants*4

  *2. Plaintiff properly asserts a 42 U.S.C. § 1983 claim given the facts alleged in Complaint demonstrate*
    *state actors have violated numerous Federal constitutional rights belonging to Plaintiff*7

  *a. Plaintiff has a procedural due process right that was violated*8

  *b. Plaintiff has substantive due process rights that were violated*8

  *c. Plaintiff has a Ninth Amendment right that was violated*13

  *d. Plaintiff has a Tenth Amendment right that was violated*15

POINT II16

PLAINTIFF'S COMPLAINT SETS FORTH PLAUSIBLE STATE CLAIMS BASED ON DEFENDANTS' VIOLATION OF
ARTICLE I, SECTIONS 13 AND 36.04 OF THE ALABAMA CONSTITUTION16

  *1. Defendants are in violation of Plaintiff's procedural and substantive due process rights under the*
    *Alabama Constitution*16

  *2. Alabama Health Care Amendment Prohibits Mandatory Participation in any Health Care System*17

**CONCLUSION**19

2

**CONSTITUTIONAL PROVISIONS**

Alabama Const. Art 1, § 13 16,17

Alabama Const. Art 1, § 36.04 16,17,18

U.S. Const. Amend. IX 13

U.S. Const. Amend. V 8

U.S. Const. Amend. X 2,15,16

U.S. Const. Amend. XIV 2,8,10,14

**CASES**

*Alabama State Conference of the NAACP v. Alabama*, No. 17-14443 (11th Cir. 2020) 16,17

*Anders v. Cuevas,* 984 F. 3d 1166 (6th Cir. 2021) 4

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) 4

*Bonnell v. Lorenzo,* 241 F. 3d 800 (6th Cir. 2001) 5

*BST Holdings v. OSHA,* No. 21-60845 (5th Cir. 2021) 5

*Cahoo v. SAS Analytics Inc.,* 912 F. 3d 887 (6th Cir. 2019) 8

*Campbell v. Nationstar Mortg.,* 611 F. App'x 288 (6th Cir. 2011) 7

*Canterbury v. Spence,* 464 F. 2d 772 (D.C. Cir.), cert. denied, 409 U.S. 1064 (1972) 11

*Carl v. Muskegon Cnty.,* 763 F. 3d 592 (6th Cir. 2014) 7

*Chiafalo v. Washington,* 140 S. Ct. 2316 (2020) 16

*City of Cleburne, Tex v. Cleburne Living Ctr.,* 473 U.S. 432 (1985) 11

*Cleveland Bd. Of Educ. V. LaFleur,* 414 U.S. 632 (1974) 9

*Cruzan v. Director, Mo. Dept. of Health,* 497 U.S. 261 (1990) 10

*Dahl v. Bd. of Trs. of W. Mich. Univ.,* No. 21-2945, Slip Op. (6th Cir. October 7, 2021) 5

*Downer v. Veilleux,* 322 A. 2d 82 (Me. 1974) 11

*Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) 5

*Family Freedom Endeavor v. Mass. BoE,* No. 21-0494 (1st Cir. 2021) 6

*Gibson v. Matthews,* 926 F. 2d 532 (6th Cir. 1991) 13

*Griswold v. Connecticut,* 381 U.S. 479 (1965) 13,14

*Hodge v. Jones,* 31 F.3d 157 (4th Cir. 1994) 10

*Holt v. Hobbs*, 574 U.S. 352, 361 (2015) 5

*Honig v. Doe,* 484 U.S. 305 (1988) 7

*Hybud Equipment Corp. v. City of Akron, Ohio,* 654 F. 2d 1187 (6th Cir. 1981) 16

*Kanuszewski v. Mich. Dep't of Health & Human Servs.,* 927 F.3d 396 (6th Cir. 2019) 4,11,12

*League of United Latin Am. Citizens v. Bredesen,* 500 F. 3d 523 (6th Cir. 2007) 7

*Meyer v. Nebraska,* 262 U.S. 390 (1923) 10

*Mills v. Rogers,* 457 U.S. 291 (1982) 11

*Montgomery v. Huntington Bank,* 346 F. 3d 693 (6th Cir. 2003) 7

*Moore v. City of E. Cleveland,* 431 U.S. 494 (1977) 9

*Murphy v. National Collegiate Athletic Assn.,* 138 S. Ct. 1461 (2018) 16

*Natanson v. Kline,* 186 Kan. 393, 350 P. 2d 1093 (1960) 11

*NRA of Am. v. Magaw,* 132 F.3d 272 (6th Cir. 1997) 6

*Parham v. J.R.,* 442 U.S. 584 (1979) 9

*Pierce v. Society of Sisters,* 268 U.S. 510 (1925) 10

*Prince v. Massachusetts,* 321 U.S. 158 (1944) 10

*Printz v. United States,* 521 U.S. 898 (1997) 16

*Quilloin v. Walcott,* 434 U.S. 246 (1978) 9

*Roe v. Wade,* 410 U.S. 113 (1973) 14

*Roman Catholic Diocese of Brooklyn v. Cuomo,* 141 S. Ct. 63 (2020) 7,13

*Rural Cmty. Workers All. v. Smithfield Foods, Inc.,* 459 F. Supp. 3d 1228 (W.D. Mo. 2020) 6

*Russ v. Watts,* 414 F. 3d 783 (7th Cir. 2005) 10

*Seal v. Morgan,* 229 F.3d 567 (6th Cir. 2000) 12

*Spencer v. Benison*, No. 18-14397, 12 (11th Cir. 2021) 8

*Stanley v. Illinois,* 405 U.S. 645 (1972) 9

*Sullivan v. Benningfield,* 920 F.3d 401 (6th Cir. 2019) 7

*Tenenbaum v. Williams,* 193 F.3d 581 (2d Cir. 1999) 10

*Troxel v. Granville,* 530 U.S. 57 (2000) 8,9

*Tune v. Walter Reed Army Medical Hospital,* 602 F. Supp. 1452 (D.C. 1985) 11

*Union Pacific R. Co. v. Botsford,* 141 U.S. 250 (1891) 11

*United States v. Playboy Entertainment Group,* 529 U.S. 803, 813 (2000) 13

*Washington v. Glucksberg,* 521 U.S. 702 (1997) 9

*Winkelman v. Parma City School Dist.,* 127 S. Ct. 1994 (2007) 9

4

*Wisconsin v. Yoder,* 406 U.S. 205 (1972) 9

*Zablocki v. Redhall,* 434 U.S. 374 (1978) 12

**STATUTES**

28 U.S.C. § 1915(d) 1

42 U.S.C. § 19832,3,7

54 Fed. Reg. 23,042, 23,0455

Alabama Code Title 16. Education § 16-1-20.35

**OTHER AUTHORITIES**

James Madison, "The Report of 1800", January 7, 18001

**RULES**

Fed. R. Civ. P. 15(a)(2) 7

## STATEMENT OF ISSUES

---

*"The people, not the government, possess the absolute sovereignty."*
*James Madison[1]*

---

Plaintiff's pro se Complaint may be inartful in certain sections but nevertheless withstands Defendants' challenges and should proceed towards discovery. Relying on his Amended Complaint, Plaintiff Adam Stephens ("Plaintiff") now only asserts his own constitutional rights as a parent. He respectfully requests that the Court dismiss his children as a named party. By proceeding as the sole Plaintiff, he can still protect his children given the symbiotic nature of their claims.[2]

The pending motion can easily have a swift resolution if the Court applies the Supreme Court authority cited in this memorandum and is not distracted by the unfortunate filing lobbed at a pro se litigant. In all candor, the Court respectfully need only read one specific Sixth Circuit decision that unequivocally describes Plaintiff's fundamental constitutional right to make healthcare decisions on behalf of his minor children. Given there are well-pled allegations regarding the harm and lack of efficacy in the standard 3-play surgical masks – the type of masks the FDA classifies as class 2 medical devices and are readily used in the Huntsville City Schools (HCS) district, discovery is appropriate to determine whether Defendants' mask mandate is sufficiently narrowly tailored to comply with the Federal and Alabama Constitutions.

---

[1] James Madison, "The Report of 1800", January 7, 1800, at 20 ("The people, not the government, possess the absolute sovereignty. The legislature, no less than the executive, is under limitations of power. Encroachments are regarded as possible from the one, as well as from the other. Hence in the United States, the great and essential rights of the people are secured against legislative, as well as against executive ambition. **They are secured, not by laws paramount to prerogative; but by constitutions paramount to laws**.") (emphasis added).

[2] The pursuit of his own constitutional claims has the impact of also protecting both of his children. And, given that his minor children A.S. and G.S. cannot assert constitutional claims on their own behalf and Plaintiff does not believe cross-moving for the appointment of counsel will be assist in moving this matter forward, the claims brought by A.S. and G.S. as a named party should respectfully be dismissed without prejudice. See 28 USC § 1915(d) ("a district court has discretion to appoint counsel for an indigent civil litigant.").

6

## SUMMARY OF ARGUMENTS

As the father of A.S. and G.S., Plaintiff is empowered to assert his own fundamental constitutional rights. His federal claims ultimately spring from the Ninth, Tenth, and Fourteenth Amendments of the U.S. Constitution and the enforcement vehicle of 42 U.S.C. § 1983. Plaintiff's well-pled Amended Complaint outlines the procedural and substantive due process defects subject to the Fourteenth Amendment associated with Defendants' mask mandate. Given Defendants' status as state actors, these Due Process Clause violations give rise to a Federal statutory claim under 42 U.S.C § 1983. Under the authority of longstanding Supreme Court precedent, Plaintiff can also assert fundamental liberty rights as regards the upbringing of his children derived from the Ninth Amendment given such rights are deeply rooted in the traditions and conscience of our people as to be ranked as fundamental. Given various Federal coercive inducements that pushed Defendants to issue their mask mandate – including significant financial inducements, Plaintiff also has a claim under the Tenth Amendment. Nowhere is there any requirement in the Eleventh Circuit that Tenth Amendment violations can only be asserted against the Federal Government. And finally, Plaintiff also has claims under the Alabama Constitution given due process violations and claim based on Defendants' creation of a mandatory health care system.

## FACTUAL BACKGROUND

A.S. and G.S. attend school in the HCS district and Plaintiff Adam Stephens ("Plaintiff") is their father. Plaintiff's Original Complaint (POC) ¶¶ 1-2. Named Defendants are all state actors given they consist of public entity and duly elected or appointed public officials. POC ¶¶ 3-10, 18-24, 33-35, 39,44. These state actors had certain process and procedures in place during all relevant times, including a Model Code of Conduct requirement that they "operate with the highest standards of stewardship and principles of public service possible." POC ¶ B Bylaws. The HCS Conduct recognizes as applicable guidance: "Read and prepare in advance to discuss issues to be considered on the board agenda" and "Make decisions on policy matters only after full consideration at public board meetings." POC ¶ B Bylaws. On July 26, 2021, HCS conducted a "special board meeting to discuss health and safety procedures for the upcoming school year." POC ¶ 25. During this meeting, the public was not permitted to discuss considerations with the board, nor did the board conduct a prior public board meeting about the subject. POC ¶ 25.

7

On an ongoing basis, HCS Board Policies reference Federal Centers for Disease Control and Prevention ("CDC") guidance, including its recommendation that everyone wear a mask in indoor settings. *Id.* At the July 1, 2021 HCS Board work session, Defendants presented health and safety measures for the upcoming school year, which included "optional masking for students and staff members." On July 26, 2021, Defendants issued the "HCS Face Covering Procedure", changing the optional masking to "must wear a face covering" **without soliciting any prior input from parents**. POC ¶ 25. POC Exh. 1.

Defendants' mandate was passed despite well-documented proof that an "all day" masking requirement is neither effective at stopping the spread of SARS-CoV-2 – the virus particle that causes COVID-19, nor Is it safe given the short-term and long-term harm to students. POC ¶ 27. POC Exh. 4 (sworn affidavit of Stephen E. Petty – an expert in the field of Industrial Hygiene who has been qualified as an expert withness in approximately 400 cases involving personal protective equipment and related disciplines). See also Declaration of Adam Stephens in Opposition to Motion to Dismiss, dated November __, 2021 ("Stephens Decl."), ¶¶ 8-27. Mr. Petty explains how COVID-19 is transmitted via aerosol particles that linger in the air for days so the only effective means of control in an indoor setting is via dilution, destruction, or containment – which is also why facial coverings provide no protection. POC ¶ 27 at 21-22. Most importantly, mask usage is harmful to students. POC ¶ 27 at 23-25; Stephens Decl. ¶¶ 8-27.

Defendants' mandating students wear medical devices that are neither effective nor safe ignores the Federal and Alabama Constitutions and is contrary to the longstanding tradition of parents deciding their children's health care in consultation with their personal physicians and after doing their own research. This Court should respectfully not turn a blind eye to this ugly reality no matter how many television ads and billboards coerce folks into "masking up".

## ARGUMENT

### POINT I
### PLAINTIFF'S COMPLAINT SETS FORTH PLAUSIBLE FEDERAL CLAIMS BASED ON DEFENDANTS' VIOLATION OF 42 U.S.C § 1983 AND THE U.S. CONSTITUTION

In suggesting that Plaintiff has no viable constitutional claim, Defendants ignore binding authority. *See* e.g. Defs. Mem (Doc 10) (arguing that the Complaint facts "do not demonstrate a constitutionally- protected liberty or property interest"); *Id*. page 8 ("no case laws supporting

8

the proposition that a school masking requirement violates students' liberty interest."); *Id.* page 9 ("the Plaintiffs have not alleged a constitutionally inadequate process"); *Id.* page 10 (arguing promotion of students' health "there is a clear rational basis for taking steps to reduce the spread of COVID-19 in the midst of a pandemic").

Defendants also ignore that the appropriate motion standard is very forgiving. The applicable "plausibility standard" is certainly not akin to a "probability requirement". *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). *See also Anders v. Cuevas*, 984 F. 3d 1166, 1175 (6th Cir. 2021) (same) (reversing dismissal of a constitutional claim). Simply put, this is not a motion for summary judgment where evidence is given some level of weight – the test here is whether well-pled allegations give rise to plausible claims.[3] Nothing more is needed, and such standard is respectfully met in this case.

### 1.    Plaintiff has standing to bring this action seeking injunctive relief as against all Defendants

Defendants misconstrue Plaintiff's grounds for standing and misstate reasons for **relief** Plaintiff seeks – which is most certainly not acknowledged by Defendants. Defendants correctly state that "The Complaint does not seek damages." Defs. Mem Doc 10 p 6. Plaintiff is not seeking **any** compensation for damages. However, they fail to recognize Plaintiff only seeks injunctive relief to prevent **ongoing and future harm**. Applicable law does not require Plaintiff's minor children "actually experience" physical harm before Plaintiff can obtain relief. *See Kanuszewski v. Mich. Dep't of Health & Human Servs*., 927 F.3d 396, 406 (6th Cir. 2019); POC Prayer for Relief.

Indeed, Defendants' entire view regarding not demonstrating a constitutionally-protected liberty is unfortunate. The right to liberty includes doing no harm. They apparently do not even suppose for a minute that wearing masks all day long might harm students or that they were wrong regarding priorities by focusing on masks when they should have instead devoted all their efforts on modifying the existing ventilation systems for HCS district schools. Clearly, Defendants didn't pursue expertise for solutions and failed to consider suggestions on

---

[3] For example, by acknowledging that the intended purpose of their mask mandate is to pursue "public health precautions and infectious disease mitigation" (HCS Policy 4.18), Defendants create an issue of material fact regarding the tailoring of their mask mandate that cannot be decided on a motion for summary judgment, let alone on a motion to dismiss.

HVAC modifications or other ventilation methods noted in the well-qualified Petty affidavit – written by **an expert in 400 cases.** POC ¶ 27.

Defendants state there is "no case law supporting the proposition that a school masking requirement violates students' liberty interest." Defs. Mem Doc 10 p 8. The constitutional violations set forth in the Original Complaint more than adequately satisfies the Article III standing requirement. As recognized by the Sixth Circuit when addressing a college's COVID-19 vaccine mandate, the alleged violation of a constitutional right *ipse dixit* satisfies the harm requirement given it goes so far as to demonstrate **irreparable harm**. *Dahl v. Bd. of Trs. of W. Mich. Univ.*, No 21-2945, Slip Op. * at 10 (6th Cir. October 7, 2021) ("Enforcement of the University's [COVID-19 vaccine mandate] policy likely would deprive plaintiffs of their First Amendment rights, an irreparable injury.") (citations omitted). *See also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury."); *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001) (recognizing that if "a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated.").

Defendants continue to impose the mandate **by force**, threatening removal from school property (HCS Policy 4.18); therefore, stripping children from their right to an education set forth in Alabama Code Title 16 § 16-1-20.3. This is governmental coercion. *See Occupational Exposure to Bloodborne Pathogens*, 54 Fed. Reg. 23,042, 23,045 (May 30, 1989) ("Health in general is an intensely personal matter. . . OSHA prefers to encourage rather than try to force by governmental coercion"). When addressing employees' vaccine mandate, the Fifth Circuit recognizes constitutionally-protected liberty. *BST Holdings v. OSHA,* No. 21-60845 (5th Cir. 2021) ("It is clear that a denial of the petitioners' proposed stay would do them **irreparable harm**...the Mandate threatens to substantially burden the liberty interests[4] of reluctant individual recipients...The public interest is also served by maintaining our constitutional structure and **maintaining the liberty of individuals** to make intensely personal decisions according to their own convictions—even, or perhaps particularly, when those decisions frustrate government officials.") (emphasis added).

---

[4]Not to mention the free religious exercise of certain employees. *See U.S. Const. amend. I; cf. Holt v. Hobbs*, 574 U.S. 352, 361 (2015).

Defendants' pinched perspective also ignores how this pandemic played out and why school board decisions involving a child's health – decisions that may cause an adverse impact long after enacting bandwagon board members are replaced with science-conscious members, should never be made outside the purvey of parents. *See e.g. Rural Cmty. Workers All. v. Smithfield Foods, Inc.*, 459 F. Supp 3d 1228, 1243 (W.D. Mo. 2020) (recognizing that "guidance on COVID-19 is continuously evolving and changing.") By offering "medical exemptions" to their mask mandate, Defendants demonstrate that they are apparently oblivious to the fact their mask mandate **may itself cause illness**. Again, Defendants never once consider that an "adverse physical consequence" may be caused by long-term mask usage. *Family Freedom Endeavor v. Mass. BoE,* No. 21-0494 (1st Cir. 2021) ("wearing a mask for several hours a day is a chronic burden and causes harm to the children who wear them...mask wearing for children causes significant psychological harm.").

Defendants also suggest Plaintiff has no right to bring suit given "the Complaint [does] not demonstrate...property interest." Defs. Mem Doc 10 p 8. Plaintiff is the father of A.S. and G.S. and as such is entitled to injunctive relief based on decisions that have been completely ignored by Defendants. For example, in Kanuszewski, the Sixth Circuit found that "Plaintiffs have standing to seek prospective relief for the alleged ongoing violation of the children's rights." *Kanuszewski, supra,* 927 F.3d at 416 (emphasis added).

In arguing for dismissal of this matter, Defendants also fail to note that a possible school suspension does not create a constitutional injury to property interest. Defs. Mem Doc 10 p 8-9. ("Since a mask mandate does not exclude students from school, it does not unlawfully deprive the students of a public education."). However, HCS Policy 4.18 states students "must comply with the procedures...Failure to do so will result in consequences including, but not limited to, temporary or permanent removal from the property." Interestingly, Defendants do not recognize that their own policy threatens property interest. Defendants have apparently very carefully kept their powder dry and will only issue A.S. and G.S. a school suspension after this Court rules in a manner they fully expect – why else would Defendants deflect with a property interest argument. What is certain, however, is that if a suspension or removal from school property occurs, it will not be a one-day suspension and it most certainly will not be "in-school."

This case is most certainly not solely based on the loss of a property right. Given that an unconstitutional act is at issue, "one does not have to await the consummation of threatened injury to obtain preventative relief." *NRA of Am v. Magaw*, 132 F.3d 272, 286 (6th Cir. 1997). *See*

11

*c.f., Roman Catholic Diocese of Brooklyn v. Cuomo,* 141 S. Ct. 63 (2020) (recognizing that "in a pandemic, the Constitution cannot be put away and forgotten."). All that is necessary is that there is a "reasonable expectation" that a constitutionally offensive policy will be enforced. *See Honig v. Doe,* 484 U.S. 305 (1988) (finding "reasonable expectation" that the policy removing disruptive students from classrooms would be applied to plaintiff in the future based on the nature of plaintiff's disability, *i.e.,* his inability to control his behavior). "Past exposure to illegal conduct" will suffice to demonstrate an injury in fact that warrants declaratory or injunctive relief with this past injury is accompanied by "continuing, present adverse effects." *Sullivan v. Benningfield,* 920 F.3d 401 (6th Cir. 2019). Even though Defendants have been seen in meetings and in public without masks (POC ¶¶ 25-26), Defendants permit ongoing reminders and harassment by teachers and school administration as a means of enforcing their unconstitutional mask mandate, either verbally and/or via email to parents.[5]

### 2. Plaintiff properly asserts a 42 U.S.C. § 1983 claim given the facts alleged in Complaint demonstrate state actors have violated numerous Federal constitutional rights belonging to Plaintiff

Under 42 U.S.C. § 1983, an individual may bring a private cause of action against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred be federal statute. 42 U.S.C § 1983. *See also Carl v Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014) ("A plaintiff suing under § 1983 must establish that he

---

[5] Specific examples of these ongoing reminders and harassment are not listed in the Original Complaint. It is respectfully requested that the Court rule on the motion as stated. Otherwise, the Court can allow Plaintiff to amend the Complaint, pursuant to Fed. R. Civ P. 15(a)(2), to conform to the evidence. *See Montgomery v. Huntington Bank*, 346 F. 3d 693 (6th Cir. 2003) (recognizing that a "*pro se* complaint must be held to less stringent standards than formal pleadings drafted by lawyers"); *League of United Latin Am. Citizens v. Bredesen*, 500 F. 3d 523 (6th Cir. 2007) ("[I]t would not serve justice to dismiss the appeal at this point because of a technical pleading deficiency, in the face of undisputed record facts confirming that plaintiffs actually do have standing and did have standing to prosecute their claims when the complaint was filed."). *See also Campbell v. Nationstar Mortg.*, 611 F. App'x 288,291 (6th Cir. 2011) ("In addition to the allegations in the complaint, [the Court] **may also consider other materials that are integral to the complaint,** are public records, or are otherwise appropriate for the taking of judicial notice.") (emphasis added).

was denied a constitutional right, and that the deprivation was caused by a defendant action under color of state law."). Plaintiff was deprived of four federal constitutional rights. Defendants claim that Plaintiff "[has] no actionable Section 1983 procedural due process claim." Defs Mem Doc 10 page 9. *See Spencer v. Benison*, No. 18-14397, 12 (11th Cir. 2021) ("[T]o pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen with his legitimate job description.") (citations omitted). Defendants legitimate job description does not include making health care decisions for school children on behalf of parents, especially when parents do not consent.

### a. Plaintiff has a procedural due process right that was violated

"[T]he Due Process Clause [of the Fifth Amendment] provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures." *Cahoo v. SAS Analytics Inc.,* 912 F. 3d 887,889 (6th Cir. 2019). The Fourteenth Amendment takes the Fifth Amendment's Due Process Clause and provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. V; U.S. Const. Amend XIV. Plaintiff has properly alleged that procedures in place were taken away prior to the implementation of the HCS mask mandate and that it was enacted in contradiction to its stated policies – violating Plaintiff's procedural due process rights. POC ¶¶ 41-45. Defendants assert "there is no due process right to public comment before a public body enacts a policy or requirement." Defs. Mem Doc 10 p 9. Defendants' own Model Code of Conduct states each member "Make decisions on policy matters only after full consideration at public board meeting." Moreover, Defendants' Certificate of Affirmation affirms each member "actively promote public support for the school system." Defendants' own rules clearly require discussion with the public before making decisions. POC ¶ B.

### b. Plaintiff has substantive due process rights that were violated

While the Due Process Clause under the Fourteenth Amendment guarantees fair process, it also "includes a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests." *Troxel v. Granville,* 530 U.S. 57 (2000). More specifically, the Due Process Clause prohibits governmental

13

interference with rights "rooted in the traditions and conscience of our people as to be ranked as fundamental" or "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702 (1997) (citations omitted). Plaintiff's right to make healthcare and educational upbringing decisions regarding his children – two of the most personal and important of parental decisions, constitute rights so basic and fundamental and so deep-rooted in our society that they stand as substantive constitutional rights. Not surprisingly, the Supreme Court in *Troxel* also recognized that "there is a presumption that fit parents act in the best interests of their children." *Troxel, supra,* 530 U.S. at 68.

The Supreme Court has for nearly one hundred years jealously guarded a parent's liberty interests in raising their children – affirming a constitutional custodial right protecting the right of parents to decide on the care and upbringing of their children. *See Winkelman v. Parma City School Dist.,* 127 S. Ct. 1994-1996 (2007). ("It is not a novel proposition to say that **parents have a recognized legal interest in the education and upbringing of their child**.") (emphasis added); *Troxel, supra,* 530 U.S. at 66 ("The liberty interest at issue in this case – **the interest of parents in the care, custody, and control of their children – is perhaps the oldest of the fundamental liberty interests recognized by this Court.**") (emphasis added); *Parham v. J.R.,* 442 U.S. 584, 602 (1979) ("Our jurisprudence historically has reflected Western civilization concepts of the family as a unit **with broad parental authority over minor children**. Our cases have consistently followed that course") (emphasis added); *Quilloin v. Walcott,* 434 U.S. 246, 255 (1978) ("We have recognized on numerous occasions that **the relationship between parent and child is constitutionally protected**") (emphasis added); *Moore v. City of E. Cleveland*, 431 U.S. 494, 503-05 (1977) (recognizing that "[d}ecisions concerning child rearing**, with Yoder, Meyer, Pierce, and other cases have recognized as entitled to constitutional protection" protect the sanctity of the family "because the institution of the family is deeply rooted in this Nation's history and tradition." (emphasis added); *Cleveland Bd. Of Educ. V. LaFleur*, 414 U.S. 632, 639-640 (1974) ("This Court has long recognized that freedom of **personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment.**") (emphasis added); *Wisconsin v. Yoder*, 406 U.S. 202,232 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. **This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition.**") (emphasis added); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (recognizing that "[t]he integrity of

14

the family unit **has found protection in the Due Process Clause of the Fourteenth Amendment**") (emphasis added); *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944) ("**It is cardinal with us that the custody, care and nurture of the child reside first in the parents**, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.") (emphasis added); *Pierce v. Society of Sisters*, 268 U.S. 510, 535 (1925) ("The fundamental theory of liberty upon which all governments in this Union repose excludes any general power of the State to standardize its children by forcing them to accept instruction from public teachers only. **The child is not the mere creature of the State**; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations.") (emphasis added); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) ("While this Court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to .... establish a home **and bring up children**.") (emphasis added). *See also Russ v. Watts,* 414 F. 3d 783, 789 (7th Cir. 2005) (recognizing the fundamental constitutional libery interest in the "care, custody, and control of their children") (citations omitted); *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999) ("Parents...have a constitutionally protected liberty interest in the care, custody and management of their children.") (citations omitted); *Hodge v. Jones*, 31 F.3d 157, 163 (4th Cir. 1994) ("[T]he sanctity of the family unit is a fundamental precept firmly ensconced in the Constitution and shielded by the Due Process Clause of the Fourteenth Amendment.") (internal citations and quotation marks omitted).

While Defendants ignore one hundred years of applicable law, it is respectfully requested that the Court reject such an approach and carefully apply this authority to deny Defendants' motion.

Coupled with Plaintiff's fundamental right to raise his children without governmental intrusion there exists another applicable fundamental right – this one derived from Plaintiff's children and now asserted on their behalf. Whether couched as an 'informed consent' right or the fundamental right to make healthcare decisions, the fundamental liberty right to choose one's healthcare has long been recognized by the Supreme Court. *See Cruzan v. Director*, Mo. Dept. of Health, 497 U.S. 261, 269-270 (1990) ("The informed consent doctrine of informed consent is that the patient generally possesses the right not to consent, that is, to refuse treatment.") (citations omitted); Id at 278 ("The Fourteenth Amendment provides that no State

15

shall 'deprive any person of life, liberty, or property, without due process of law.' **The principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment may be inferred from our prior decisions.**") (emphasis added); *Mills v. Rogers*, 457 U.S. 291, 294, n. 4 (1982) ("[T]he right to refuse any medical treatment emerged from the doctrines of trespass and battery, which were applied to unauthorized touchings by a physician"); *Washington, supra*, 521 U.S. at 725 ("The right assumed in *Cruzan*, however, was not simply deduced from abstract concepts of personal autonomy. Given the common-law rule that forced medication was a battery, and the **long legal tradition protecting the decision to refuse unwanted medical treatment,** our assumption was entirely consistent with this Nation's history and constitutional traditions.") (emphasis added); *City of Cleburne, Tex v. Cleburne Living Ctr.*, 473 U.S. 432, 453 (1985) (Stevens, J., concurring) ("The judiciary exists as a check on majoritarian rule. It has a duty to protect the Constitutional rights, including privacy and bodily autonomy...") (emphasis added); *Union Pacific R. Co. v. Botsford*, 141 U.S. 250, 251-252 (1891) ("The inviolability of the person" has been held as "sacred' and "carefully guarded" as any common-law right."); *Tune v. Walter Reed Army Medical Hospital*, 602 F. Supp. 1452, 1455 (D.C. 1985) (It is a "well-established rule of general law...that it is the patient, not the physician, who ultimately decides if treatment – any treatment – is to be given at all...The rule has never been qualified in its application by either the nature or purpose of the treatment, or the gravity of the consequences of acceding to or foregoing it."). *See also Downer v. Veilleux*, 322 A. 2d 82, 91 (Me. 1974) ("The rationale of this rule lies in the fact that every competent adult has the right to forego treatment, or even cure, it it entails what for him are intolerable consequences or risks, however unwise his sense of values may be to others"); *Canterbury v. Spence*, 464 F. 2d 772, 780 (D.C. Cir.), *cert. denied*, 409 U.S. 1064 (1972) ("The root premise" of informed consent "is the concept, fundamental in American jurisprudence, that '[e]very human being of adult years and sound mind has a right to determine what shall be done with his own body'".) (citation omitted); *Natanson v. Kline*, 186 Kan. 393, 406-407, 350 P. 2d 1093, 1104 (1960) ("Anglo-American law starts with the premise of thorough-going self determination. It follows that each man is considered to be master of his own body, and he may, if he be of sound mind, expressly prohibit the performance of lifesaving surgery, or other medical treatment.").

Given the importance of the matters set forth in this action, Plaintiff would rather focus on directly applicable Supreme Court authority and the one Sixth Circuit case that provides the best "step-by-step" guidance for this Court, namely the *Kanuszewski* decision.

16

In *Kanuszewski,* the Sixth Circuit determined what claims parents could bring against state actors who took blood samples of their newborn children without adequate parental consent. Kanuszewski, supra, 927 F.3d at 404 ("Plaintiffs allege that Defendants violated their substantive due process rights by not allowing them to decide whether to accept or reject the medical procedure in question prior to the collection of their babies' blood.") The samples were used to test for certain diseases and then later stored at a facility accessible to the Michigan Department of Health and Human Services. The Court concluded that only those claims on behalf of the parents **seeking injunctive relief** barring subsequent retention, transfer, and storage of the samples could be pursued. Kanuszewski, supra, 927 F.3d at 419-420 ("[I]t is **logically the parents who possess a fundamental right to direct the medical care of their children**. For these reasons, parents' substantive due process right "to make decisions concerning the care, custody, and control" of their children includes the right to direct their children's medical care... The only remaining question is whether Defendants' subsequent retention, transfer, and storage of the samples violate the parents' fundamental rights. Plaintiffs allege facts sufficient to state plausible claims for relief on this issue, and we therefore reverse the district court's dismissal of these claims... Taking these allegations as true, Defendants' actions constitute a denial of the parents' fundamental right to direct the medical care of their children, and their actions must survive strict scrutiny.") (citations omitted).

Again, it is almost beside the point that the existing and future harm revealed by this matter dwarfs the future risks addressed in the Kanuszewski case. Given the potential harm and lack of efficacy outlined in the Original Complaint, Petty Affidavit, and Stephens Declaration in Opposition, the decision whether to use masks – acknowledged medical devices, should be left squarely with Plaintiff. More to the point, the existence of Plaintiff's two fundamental rights allowing him to direct healthcare decisions for his children means that "[g]overnment actions that burden the exercise of [these rights] are subject to strict scrutiny, and will be upheld only when they are narrowly tailored to a compelling governmental interest." *Seal v. Morgan*, 229 F.3d 567, 574-75 (6th Cir. 2000). *See also Zablocki v. Redhall*, 434 U.S. 374, 388 (1978) (Whenever a policy "significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests."). The compelling-interest prong can easily be conceded by Plaintiff in this case. Yet, as recognized by the Supreme Court: "Stemming the spread of COVID-19 is unquestionably a compelling interest, but it is hard to see how the challenged regulations

17

can be regarded as 'narrowly tailored.'" *Roman Catholic Diocese of Brooklyn*, *supra*, 141 S. Ct. at 67 (citation omitted).

To be narrowly tailored, a law must be the least restrictive means of accomplishing the legislature's compelling interest. *United States v. Playboy Entertainment Group*, 529 U.S. 803, 813 (2000). Respectfully, this fact-sensitive inquiry should not be decided in a motion to dismiss. *See e.g., Kanuszewski*, *supra*, 927 F.3d at 421 ("On demand, the parties will also be able to produce evidence relating to whether Defendants had a compelling interest in retaining, transferring, and storing the children's blood samples after screening them for diseases, and whether Defendants' means for achieving their interest were narrowly tailored.")

### c. Plaintiff has a Ninth Amendment right that was violated

Under the Ninth Amendment: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. Amend. IX. The Ninth Amendment was added to the Bill of Rights to ensure no one could "deny fundamental rights merely because they were not specifically enumerated in the Constitution." *Gibson v. Matthews*, 926 F. 2d 532 (6th Cir. 1991).

Plaintiff does not deny that the Ninth Amendment operates here only as a conduit for asserting his fundamental rights as a parent and the word "parent" is certainly not in the Ninth Amendment or even the entire U.S. Constitution for that matter. Yet, in *Griswold v. Connecticut,* 381 U.S. 479 (1965), the Supreme Court held a Connecticut birth control law unconstitutional with the words "marriage", "right of privacy", "birth control", and "family rights" were nowhere to be found in the Constitution. In recognizing a fundamental constitutional "right of privacy in marriage", Justice Goldberg wrote: "The language and history of the Ninth Amendment reveal that the Framers of the Constitution believed that there are additional fundamental rights, protected from governmental infringement, which exist alongside those fundamental rights specifically mentioned in the first eight constitutional amendments." *Id.* at 488. In other words, "the Framers did not intend that the first eight amendments be construed to exhaust the basic and fundamental rights which the Constitution guaranteed to the people." *Id.* at 490.

Defendants denigrate this key part of the Bill of Rights by ignoring it stating "there is no plausible allegation that the...defendants committed a constitutional violation...there is no case law." Defs. Mem Doc 10 page 14. This is simply not true. What about the U.S Constitution? The

18

Constitution is a binding contract that We The People wrote. Defendants' position ignores the fact the Ninth Amendment is a vital aspect of the Constitution and can be concretely used by this Court.

Additionally, the Supreme Court's decision in *Griswold* shatters any pretense Defendants may have regarding how the Ninth Amendment operates:

> **While this Court has had little occasion to interpret the Ninth Amendment, "[I]t cannot be presumed that any clause in the constitution is intended to be without effect."** *Marbury v. Madison,* 1 Cranch 137, 174. In interpreting the Constitution, "real effect should be given to all the words it uses." *Myers v United States,* 272 U.S. 52, 151. **The Ninth Amendment to the Constitution may be regarded by some as a recent discovery and may be forgotten by others, but since 1971 it has been a basic part of the Constitution which we are sworn to uphold. *To hold that a right so basic and fundamental and so deep-rooted in our society as the right of privacy in marriage may be infringed because that right is not guaranteed in so many words by the first eight amendments to the Constitution is to ignore the Ninth Amendment and to give it no effect whatsoever.*** Moreover, a judicial construction that this fundamental right is not protected by the Constitution because it is not mentioned in explicit terms by one of the first eight amendments or elsewhere in the Constitution would violate the Ninth Amendment, which specifically states that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

*Griswold, supra,* 381 U.S. at 490 – 492 (emphasis added). *See also Roe v. Wade,* 410 U.S. 113, 153 (1973) ("This right of privacy, whether it be founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action, as we feel it is, **or, as the District Court determined, in the Ninth Amendment's reservation of rights to the people**, is broad enough to encompass a woman's decision whether or not to terminate her pregnancy.") (emphasis added).

Plaintiff's Ninth Amendment liberty right in parenting – a right not found in the Bill of Rights, should respectfully be recognized, and enforced by this Court. As set forth above, it is a basic and fundamental right that is deep-rooted in our society and merits protection from state interference unless such interference is narrowly tailored to suit a compelling need. More to

19

the point, whether such recognition was properly undertaken by Defendants is not subject to resolution in a motion to dismiss.

### d. Plaintiff has a Tenth Amendment right that was violated

Under the Tenth Amendment: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." U.S. Const. Amend X. The Defendants claim no constitutional rights were violated and that rights need to be clearly established for a violation to occur. Defs. Mem Doc 10 page 8, 12. ("Complaint [does] not demonstrate a constitutionally-protected liberty or property interest...unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct."). The Tenth Amendment has been clearly established since the ratification of the Constitution and certainly applied at the time of the Defendants' challenged conduct. All constitutional prohibitions – including the one found under the Tenth Amendment, stand as prohibitions against all conduct from any quarters. In this case, Defendants are in violation of the Tenth Amendment even though this constitutional prohibition is intended to **protect state actors**.

In this case, the Federal Government has improperly intervened in the most of matters, namely how local schools should be run. For example, Defendants slated to receive significant federal funding directly related to its implementation of COVID-19 mitigation efforts – $26 million in ESSER funding alone. POC ¶ 29. Moreover, Defendants stated in an email: "the Centers for Disease Control and Prevention (CDC) and the American Academy of Pediatrics (AAP) have shared guidance in support of students wearing masks while at school." POC ¶ 25. Defendants relied on scientifically unfound and constitutionally repugnant guidance by federal government agencies and enacted an oppressive and dangerous universal mask mandate in misguided reliance on the information provided by the federal government. "Defendants have a financial incentive for implementing the mask mandate, despite that such a requirement serves no scientific purpose and subjects individuals who wear masks to the health risk..." POC ¶ 30. *See also* POC, Exh. 7 (describing the use of "funds to enact appropriate measures to help schools to invest in mitigation strategies consistent with the Centers for Disease Control and Prevention's (CDC) Operational Strategy for K-12 Schools to the greatest extent practicable.").

Such meddling is improper under the Tenth Amendment and any remnants of this interference should be rejected – including Defendants' mask mandate. See *Hybud Equipment Corp. v. City of Akron, Ohio*, 654 F. 2d 1187 (6th Cir. 1981) ("Since solid waste disposal including the regulation of garbage collection, incineration and "recycling" **is a customary area of local concern long reserved to state and local governments by practice, tradition and legal precedent**, the Sherman Act should not apply. Tenth and Eleventh Amendment values support the authority of local governments to act in this field.") (emphasis added). See also *Chiafalo v. Washington*, 140 S. Ct. 2316, 2333 (2020) (Thomas, J., concurring) ("When the Constitution is silent, authority resides with the States or the people. This allocation of power is both embodied in the structure of our Constitution and expressly required by the Tenth Amendment."); *Murphy v. National Collegiate Athletic Assn*., 138 S. Ct. 1461, 1477 (2018) ("[A] healthy balance of power between the States and the Federal Government [reduces] the risk of tyranny and abuse from either front.") (citation omitted); *Printz v. United States*, 521 U.S. 898, 935 (1997) ("The Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program. **It matters not whether policymaking is involved, and no case-by case weighing of the burdens or benefits is necessary**; such commands are fundamentally incompatible with our constitutional system of dual sovereignty.") (emphasis added); *Alabama State Conference of the NAACP v. Alabama*, No. 17-14443, 5 (11th Cir. 2020) ("[w]hen Congress chooses to subject the States to federal jurisdiction, it must do so specifically.") (citation omitted).

**POINT II**

**PLAINTIFF'S COMPLAINT SETS FORTH PLAUSIBLE STATE CLAIMS BASED ON DEFENDANTS' VIOLATION OF ARTICLE 1, SECTIONS 13 AND 36.04 OF THE ALABAMA CONSTITUTION**

**1. Defendants are in violation of Plaintiff's procedural and substantive due process rights under the Alabama Constitution**

In Count II, Plaintiff brings forth due process claims under the Alabama Constitution. See POC ¶¶ 43-44. To amend and correct the POC ¶ 42, the Alabama Constitution states "That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be

administered without sale, denial, or delay." Alabama Const. Article 1 § 13. Procedural and substantive due process violations under the U.S. Constitution constitute equivalent violations under the Alabama Constitution. Accordingly, for the reasons set forth above in Point I(a) and (b), Plaintiff should respectfully be permitted to pursue his claims under Article I, Section 13 of the Alabama Constitution. Alabama Const. Article 1 § 13.

Defendants' claim "there is no due process right to public comment before a public body enacts a policy or requirement." Defs Mem Doc 10 page 9. Frankly, Defendants' contradict their own policies. HCS Model Code of Conduct states each member "Make decisions on policy matters only after full consideration at public board meeting." Moreover, Defendants' Certificate of Affirmation affirms each member "actively promote public support for the school system." Defendants' own rules clearly require discussion with the public before making decisions. POC ¶ B.

Defendants argue that Plaintiffs should "challenge the mask decision through [Alabama] courts." Respectfully, the Plaintiff holds the right to bring the case to district court. *See Alabama State Conference of the NAACP*, *supra*, 6 (11th Cir. 2020) (recognizing "an individual may bring a civil action 'against any employer (including a public agency)' and that a 'public agency' includes 'the government of a State or political subdivision thereof.') (citation omitted); *Id.*, 5,6 (11th Cir. 2020) ("allow[ing] aggrieved parties to "bring a civil action . . . in any State court of competent jurisdiction or in a district court of the United States") (citation omitted). Plaintiff respectfully requests the Court to continue hearing the case.

### 2. Alabama Health Care Amendment Prohibits Mandatory Participation in any Health Care System

Article I, Section 36.04 of the Alabama Constitution reads in part:

> (a) In order to **preserve the freedom** of all residents of Alabama to provide for their own health care, **a law or rule shall not compel, directly or indirectly, any person**, employer, or health care provider **to participate in any health care system**.

Alabama Const. Art I, § 36.04 (emphasis added).

Whether deliberately or inadvertently, Defendants dismiss the language of this Amendment by continuing the mask mandate. Contrary to what is stated by Defendants, the mandate does violate the Alabama Constitution. Compare Defs. Mem Doc 10 page 15 (falsely

22

claiming "the mask mandate does not violate any Alabama Constitutional provision.") *with* Alabama Const. Art I, § 36.04 "(A) law **or rule** shall not compel, directly or indirectly, any person...to participate in any health care system." (emphasis added). Plaintiff already established that masks are medical devices and that HCS board tracks COVID-19 cases, which are both part of a health care system. Stephens Decl. ¶ 10, 33, 34.

By way of background, the Alabama Health Care Amendment was placed on the November 6, 2012 as an initiated constitutional amendment after the measure was passed during the 2011 state legislative session by three-fifths vote, officially sending it to the ballot in 2012 for public vote. The amendment passed with approximately 59% of the public vote. *See* Stephens Decl. ¶ 31. Even though the measure was initially launched in response to the signing of a 2010 national health care mandate law, the amendment's final language comfortably serves today as a constitutional safeguard against the conduct of Defendants. This successful ballot initiative demonstrates that the Alabama Health Care Amendment was initiated to preserve the freedom of Alabamians to choose their health care.

In fact, the ballot language stated: "Proposing an amendment to the Constitution of Alabama of 1901, to **prohibit any person**, employer, or health care provider from **being compelled to participate in any health care system**." *Id.* (emphasis added). Defendants compelled participation by way of declaring a local mandate. As a result, both of Plaintiff's children now participate in a health care system. While Defendants is certainly free to provide health care services to its students and employees, it is prohibited from compelling participation in such a health care system if it has as its function or purpose the management of, processing of, enrollment of HCS students and employees for, in full or in part, health care services, health care data, or health care information. See Alabama Const. Art I, § 36.04. This system and database are physically maintained on the HCS website under 2021-22 COVID-19 Information Center and is the database for all of Defendants' data collection activities. *See* Stephens Decl ¶ 33. At no point in time did Plaintiff ever consent to the use of A.S. and G.S. personal health care data for use in the HCS COVID-19 system and database. Plaintiff can now bring forth this constitutional claim on behalf of his minor children. *Kanuszewski, supra,* 927 F.3d at 416.

Defendants' mask mandate and its resulting harmful efforts to stop a virus with a paradoxical near zero change of seriously harming children (Stephen Decl ¶ 36) is furthered by the receipt of personal healthcare data into the HCS COVID-19 database and its distribution of

23

medical advice within every school, both via email to parents and signs posted physically in schools. More to the point, it compels the use of unhealthy medical devices without adequate informed consent and collects personal data of students and employees – whether quarantine information, contact tracing data, or any other form of personal information that is managed and processed by Defendants in its HCS COVID-19 database. By promoting a health care system that tracks health data and mandates ineffective and potentially harmful masks within that tracking system, Defendants violate the Alabama Constitution and endanger the health and welfare of Alabamian children. This Court respectfully must follow the law and right our ship before it's too late.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the pending Motion to Dismiss; that the Court all this matter to proceed to discovery; and that the Court grant what other relief it deems fair and just.

Respectfully submitted,

ADAM STEPHENS

Dated: November 2021

24

## CERTIFICATE

I hereby certify that on this 24 day of November 2021, a copy of the foregoing Brief in Opposition to Defendants' Motion to Dismiss the Complaint and in Support of Cross Motion to Appoint Counsel was filed with the United States District Court for the Northern District of Alabama. Notice was also sent to Defendants counsel via email to:

TPB@lanierford.com.

I also certify that pursuant to L. Civ. R. 7.1(f), I have not been informed by the Clerk that this action has been assigned a track. Accordingly, in keeping with L. Civ. R. 7.1(f), Plaintiffs' Memorandum of Law does not exceed the page limitation for dispositive memorandums filed in **complex cases** – which is the anticipated track for constitutional cases of this nature. To the extent this case is eventually assigned to the standard track, it is respectfully requested that the Court permit within Memorandum of Law to exceed the twenty-page limitation of a standard track case.

ADAM STEPHENS

25